Judge Underwood,
delivered the opinion oí' tho court.
This is an action of trover, in which the. plaintiff, Wood, complained of the conversion of a horse, by the intestate Worthington. These are tho facts. Wood and Worthington were transporting horses in the same boat, down the Mississippi river. When near Memphis, the boat was wrecked, and some of the horses made their escape. Of the horses which thus strayed, some wore the property of Wood, and some the property of Worthington. Both were anxious to proceed on down the river with the horses which remained; hut on Wood declaring, that he would not stay if he “never got the. horses that had strayed,” it was agreed, that Worthington should remain, and that he and Culbertson, a boat-hand employed by Wood, who also staid behind, should collect the horses and bring them on. The white horse, the subject of controversy, was left with others, which had not strayed. Cul bertson says, “he did not consider himself as having charge of the horse, as manager, &c.” It does not appear what arrangement was made, to defray the expenses of the horses, which were left after the wreck,, and while the pursuit of the straps continued; nor what provision was made for defraying the expenses of that part of the drove left behind, after the strays might be. reclaimed on their passage down the river.
Culbertson does not state, that these things were left to his management. It is evident, that Worthington was the person, superintending and controling. He sold three of the horses left by Wood, among them, *175 the white horse in controversy. This horse was sold on a credit at the same time Worthington sold one of his own. The purchasers of the horses gave a joint note, pa) able to Worthington and Wood, as obligees. When Worthington overtook Wood in J .ouisiana, and he was informed of the sale of the white horse, he made no complaint; lie seemed to be satisfied. How Wood’s other horses were settled for by Worthington does not appear, butjhis suit has been instituted, to recover of W orlhing-ton’s administrator, for the conversion of the white horse, about three years after he was sold; and when it is admitted, that the purchaser will ultimately pay the amount to the attorney, into whose hands the joint note has been placed for collection, and after the death of Worthington. The business of taking horses from Kentucky, to Louisiana, for sale, is common, in the en-terpnze of our citizens, /.gents are sometimes employed to transact the business for the owners of the property. Now as it is clear, that Wood and Wor-thingion were both engaged in this business; and that Worthington had control as principal manager of that part of Wood’s horses left behind, after the boat was wrecked; we do not feel authorized under all the circumstances, to limit his power over the property to the collection of the strays, defraying expenses and taking the horses on to Wood, so as to make a sale of one of them; a conversion to Worthington’s use; especially, when the note was taken in Wood’s name as a co-obli-gee; thereby manifesting an intention on the part of Worthington, to secure Wood in the price, for which the horse sold. This transaction looks very little like the conversion of property, to the use of Worthington, and from the nature of the business and the facts proved; we are of opinion that the jury were authorized to infer, that Wood, whenheparied with Worthington, gave him authority to sell the horses or any of them left, if nothing better could be done in the judgment oí Worthington. If boats could not be procured to take the horses left, down the river, which seems to have been the conveyance contemplated, what was to he done with them? Wore they to be sold, sent hack to Kentucky; sent over land to Louisiana, or left at Memphis, until their expenses had amounted to them value?
Mills and Jirmcn, ícr píainüií; .Ocpu:, for defendant.
Judgment aíormed wiih cost?.